# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| ATLANTIC RECORDING CORPORATION, BAD BOY RECORDS LLC, BIG BEAT RECORDS INC., ELEKTRA ENTERTAINMENT GROUP INC., ELEKTRA ENTERTAINMENT LLC, RHINO ENTERTAINMENT LLC, WARNER MUSIC INTERNATIONAL SERVICES LIMITED, WARNER MUSIC NASHVILLE LLC, WARNER RECORDS INC., COTILLION MUSIC, INC., GENE AUTRY'S WESTERN MUSIC PUBLISHING CO., UNICHAPPELL MUSIC INC., W CHAPPELL MUSIC CORP., W.C.M. MUSIC CORP., WARNER CHAPPELL MUSIC, INC., and WARNER-TAMERLANE PUBLISHING CORP., | CASE NO.: <br><br> JUDGE <br><br> **COMPLAINT FOR:** <br><br> 1. **DIRECT COPYRIGHT INFRINGEMENT** <br><br> 2. **CONTRIBUTORY COPYRIGHT INFRINGEMENT** <br><br> 3. **VICARIOUS COPYRIGHT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| v. | |
| DESIGNER BRANDS INC., DSW SHOE WAREHOUSE, INC., TOPO ATHLETIC LLC, and DOES 1 through 10, inclusive, | |
| Defendants. | |

Plaintiffs Atlantic Recording Corporation, Bad Boy Records LLC, Big Beat Records Inc., Elektra Entertainment Group Inc., Elektra Entertainment LLC, Rhino Entertainment LLC, Warner Music International Services Limited, Warner Music Nashville LLC, Warner Records Inc., Cotillion Music, Inc., Gene Autry's Western Music Publishing Co., Unichappell Music Inc., W Chappell Music Corp., W.C.M. Music Corp., Warner Chappell Music, Inc., and Warner-Tamerlane Publishing Corp. (individually, a "Plaintiff," and collectively, "Plaintiffs"), by and through their attorneys, allege as follows:

## INTRODUCTION

1.       Plaintiffs and their affiliated recorded music and music publishing companies are collectively known as Warner Music Group ("WMG"), which is home to legendary artists and songwriters and many of today's most popular hits.  WMG produces, manufactures, distributes, sells, and licenses a legion of iconic and popular sound recordings and musical compositions, including musical works by Bruno Mars, Cardi B, Dua Lipa, Ed Sheeran, Fleetwood Mac, and Madonna.

2.       Designer Brands Inc. and its subsidiaries DSW Shoe Warehouse, Inc. and Topo Athletic LLC (collectively "DSW" or "Defendants") are some of North America's largest designers, producers and retailers of footwear and accessories.  They operate a portfolio of retail brands in the United States and Canada, including DSW Designer Shoe Warehouse, The Shoe Company, Topo, and Keds.

3.       DSW is a sophisticated, 55-year-old company, with decades of experience licensing music for advertising – including a history of licensing music from WMG.  DSW routinely relies upon intellectual property law to protect its own intellectual property.  Yet when it comes to social media marketing and promotion, DSW has decided to use WMG's intellectual property without a license or other authorization.

4.     Over recent years, DSW, like many retailers, has shifted much of its marketing focus from traditional advertising to promoting its products through social media platforms such as Instagram and TikTok, as well as via paid partnerships with well-known social media "influencers."[1]  Broadly speaking, an "influencer" is a person with a large social media following whose reputation and credibility enables them to influence consumers' purchasing decisions or brand awareness.  Knowing that popular music is the best way to capture the attention of its targeted audience, DSW and its social media influencers have incorporated many of Plaintiffs' most valuable musical works into marketing and advertising videos for DSW's products.  These videos (each, a "DSW Video," and collectively, the "DSW Videos") are an integral part of DSW's promotional, marketing, and branding strategy.  DSW distributes the DSW Videos to the public via the various accounts that it maintains on a variety of social media platforms.

5.     Even though DSW is a sophisticated party that has extensive experience with music licensing, DSW and its influencer partners have failed to seek permission or pay for the use of the sound recordings and musical compositions that are featured in the DSW Videos.  To the contrary, Plaintiffs' initial investigation has revealed that DSW misappropriated over ***two hundred*** of Plaintiffs' popular and valuable musical works, using these musical works to attract attention to the DSW Videos, drive sales to DSW, and build DSW's brand awareness and profile.  Among the musical works infringed by DSW are some of the most popular sound recordings and musical compositions in the world, including, by way of example, "Up" by Cardi B, "Dreams" by Fleetwood Mac, "About Damn Time" by Lizzo, "Hung Up" by Madonna, and "Work it" by

---

[1] DSW's social media advertising is similar to that of Vital Pharmaceuticals, Inc. d/b/a "Bang Energy," an energy drink and sports nutrition supplement company that recently was found liable for copyright infringement in two different lawsuits due to the same type of copyright infringement alleged herein.  *See UMG Recs., Inc. v. Vital Pharms., Inc.*, No. 21-CV-60914-CIV, 2022 WL 2670339 (S.D. Fla. July 11, 2022); *Sony Music Entm't v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858 (S.D. Fla. Sept. 14, 2022).

Missy Elliot (together with the other musical works listed on **Schedule A**, "Plaintiffs' Works"). DSW not only failed to pay for the use of Plaintiffs' Works, but by including these musical works in their promotional materials without Plaintiffs' consent, DSW deprived Plaintiffs and the recording artists and songwriters that Plaintiffs represent of the ability to control how and where their musical works are used.

6.     Defendants' conduct has caused Plaintiffs substantial and irreparable harm. Plaintiffs bring this action to obtain redress for Defendants' infringement of Plaintiffs' valuable rights and to prevent further violations of those rights.

## JURISDICTION AND VENUE

7.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), insofar as this action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

8.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

9.     The Court has personal jurisdiction over DSW because, among other things: (a) DSW is an Ohio corporation with its principal place of business in this state and this District; (b) Defendants have been doing business continuously in and maintain a regular presence in this state and this District; (c) a substantial part of the wrongful acts occurred within this state and this District, and (d) the effects of Defendants' unlawful conduct are directed toward and felt in this state and this District.

## THE PARTIES

### Plaintiffs

10.     Plaintiff Atlantic Recording Corporation is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York.

11.     Plaintiff Bad Boy Records LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

12.    Plaintiff Big Beat Records Inc. is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York.

13.    Plaintiff Elektra Entertainment Group Inc. is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York.

14.    Plaintiff Elektra Entertainment LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

15.    Plaintiff Rhino Entertainment LLC is a Delaware limited liability company with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

16.    Plaintiff Warner Music International Services Limited is a limited company organized and existing under the laws of England and Wales, with its principal place of business at 27 Wrights Lane, London, England.

17.    Plaintiff Warner Music Nashville LLC is a Tennessee limited liability company with its principal place of business at 20 Music Square East, Nashville, Tennessee.

18.    Plaintiff Warner Records Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

19.    Plaintiff Cotillion Music, Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

20.    Plaintiff Gene Autry's Western Music Publishing Co. is a California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

21.    Plaintiff Unichappell Music Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

22.    Plaintiff W Chappell Music Corp. is a California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

23.     Plaintiff W.C.M. Music Corp. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

24.     Plaintiff Warner Chappell Music, Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

25.     Plaintiff Warner-Tamerlane Publishing Corp. is a California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

## **Defendants**

26.     Defendant Designer Brands Inc. is an Ohio corporation with its principal place of business at 810 DSW Drive, Columbus, OH 43219.

27.     Defendant DSW Shoe Warehouse, Inc. is a Missouri corporation and, upon information and belief, maintains its principal place of business in Ohio.

28.     Defendant Topo Athletic LLC is a Delaware corporation with its principal place of business at 810 DSW Drive, Columbus, OH 43219. On December 13, 2022, DSW acquired a 79.4% ownership interest in Topo Athletic LLC.

29.     On February 4, 2023, Defendants acquired the Keds brand, a popular footwear brand with an active social media presence.

30.     Upon information and belief, Defendants Does 1 through 10 are subsidiaries, affiliates, agents, franchisees or representatives of DSW, and/or are otherwise responsible for and proximately caused and are causing the harm and damages alleged in this Complaint. Plaintiffs presently are unaware of the true names and/or the involvement of the Defendants sued herein by the fictitious designations Does 1 through 10, and for that reason, sue them by those designations.  Plaintiffs will seek leave to amend this Complaint to identify Does 1 through 10 when their true names and involvement in the infringements and other wrongful conduct hereinafter described are known.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### Plaintiffs and Their Copyrighted Works

31.     Plaintiffs Atlantic Recording Corporation, Bad Boy Records LLC, Big Beat Records Inc., Elektra Entertainment Group Inc., Elektra Entertainment LLC, Rhino Entertainment LLC, Warner Music International Services Limited, Warner Music Nashville LLC, and Warner Records Inc. are engaged in the business of producing, marketing, promoting, distributing, selling, and/or licensing sound recordings to third parties for various kinds of uses, including for commercial use in posts on social media platforms.

32.     Plaintiffs Cotillion Music, Inc., Gene Autry's Western Music Publishing Co., Unichappell Music Inc., W Chappell Music Corp., W.C.M. Music Corp., Warner Chappell Music, Inc., and Warner-Tamerlane Publishing Corp. are engaged in the business of developing, promoting, publishing, acquiring, administering, and/or licensing musical compositions, including for commercial use in posts on social media platforms.

33.     Plaintiffs devote considerable effort to discovering and developing recording artists and songwriters; creating, advertising, promoting, selling, and licensing sound recordings embodying the performances of their exclusive recording artists; and developing, publishing, administering, and licensing their repertoire of musical compositions.

34.     Plaintiffs' sound recordings and musical compositions are protected by copyright law, which grants the copyright owner the exclusive right to, among other things, reproduce, distribute, and create derivative works of copyrighted works; to publicly perform musical compositions; and to digitally transmit sound recordings to the public.  An important portion of Plaintiffs' return on their investment in sound recordings and musical compositions comes from licensing sound recordings and musical compositions to others who use Plaintiffs' musical works in videos, films, television shows, commercials, video games, and on social media.

35.     Additionally, many recording artists and songwriters do not permit their musical works to be used in advertising, or are extremely selective about such uses.  Accordingly, a license for the use of Plaintiffs' musical works for advertising or promotional purposes can be extremely valuable, since Plaintiffs do not allow their musical works to be used by everyone who desires a license.  The use of Plaintiffs' musical works in advertising and marketing without Plaintiffs' permission can have a significant impact on the overall value of those musical works and can harm the relationship between Plaintiffs and the recording artists and songwriters with whom they have contracted.

36.     Attached as Schedule A is an illustrative, non-exhaustive list of sound recordings and musical compositions of which the identified Plaintiff is an owner or exclusive licensee in the United States of rights under copyright, which rights have been infringed by DSW, accompanied by the URLs of infringing DSW Videos featuring the sound recording or musical composition posted and maintained by DSW on one or more of its owned or operated social media channels.  Each listed sound recording and musical composition reflected in Schedule A is registered with the United States Copyright Office.

37.     Plaintiffs' investigation is continuing, and discovery is likely to reveal additional infringements.  Plaintiffs intend to seek leave to amend this Complaint at an appropriate time to provide an expanded list of musical works infringed by Defendants.

### Defendants' Infringing Conduct

38.     DSW is one of North America's largest designers, producers and retailers of footwear and accessories.  It was founded in 1969.  During its 55-year history, DSW has repeatedly licensed music for promoting its brand and products in television commercials. Indeed, DSW has licensed music for its commercials from WMG in the past.  Additionally, upon

information and belief, DSW obtains licenses to play music in its retail stores and/or otherwise licenses music in connection with its business activities.

39.     For over a decade, social media has been a growing part of DSW's advertising model, where music has equally been at the forefront.  In a 2012 article, DSW stressed that "[w]hen it comes to using social media as a selling tool, Designer Shoe Warehouse gets it. Social media is not an avenue for selling product, but a place to build a community."[2] A recent marketing campaign launched by DSW was described as: "com[ing] to life **through memorable, music-themed** experience," (emphasis added) and emphasizes the use of "emotional brand connection & content generation" as well as a "themed playlist" and "brand ambassadors, celebrity, VIP, influencer[s] & stylists".[3]

40.     Upon information and belief, DSW devotes substantial resources to its social media advertising and promotional efforts, and, in order to build its profile on social media, DSW partners with social media influencers to promote its clothing and brands.

41.     DSW has accordingly created multiple positions such as "Senior Influencer Marketing Specialist" and "Senior Content Creator," the latter of which is described as "a creative professional responsible for producing engaging social video content" and emphasizes "content creation, trend ideation, and video editing to enhance DSW's organic social initiatives." As part of its online advertising efforts, DSW not only maintains and operates numerous social media accounts of its own, with hundreds of thousands of online followers, but it also collaborates with social media influencers.

---

[2] https://multichannelmerchant.com/marketing/dsw-builds-shoe-lover-community-with-social-media/.

[3] https://filecache.investorroom.com/ir1_dswinc/612/DBI_Investor%20Day%20Deck%20-%20Final.pdf.

42.     Popular music is an important part of these social media and branding efforts. DSW's social media marketing team, as well as DSW's social media influencers and partners, have created and disseminated over two hundred infringing DSW Videos, which typically depict individuals showcasing DSW footwear, clothing and accessories, synchronized to an audio track of a popular commercially available sound recording and musical composition.  The audio tracks generally run the full length of the DSW Video, and the DSW Video typically includes the most recognizable portion of the featured musical work, such as the chorus or hook.  Upon information and belief, DSW maintains access to and/or tracks the posting and delivery of social media and other digital media materials throughout the company, including the infringing DSW Videos.

43.     Upon information and belief, DSW's professional staff are directly involved in creating, reproducing, and/or distributing the DSW Videos.  This includes (1) creating, commissioning, reviewing, and selecting videos for use on social media; (2) directly working with and overseeing social media influencers with whom DSW partners, including by providing advice and direction as to the content of the promotional videos; (3) specifically encouraging social media influencers to create video content and feature DSW products in their videos, including the infringing DSW Videos; and (4) actively reviewing influencer-made DSW Videos and then promoting and/or redistributing the videos by posting them on DSW's own social media pages.

44.     In exchange for creating and distributing promotional videos, DSW provides its social media influencers with monetary compensation, either directly or through commissions and/or rebates (though, upon information and belief, contrary to Federal Trade Commission guidelines, the social media influencers often do not disclose that they receive compensation in any form).  Upon information and belief, DSW enters into comprehensive contracts with many

leading social media influencers, including the influencers who are featured in the DSW Videos.

45.     Although DSW has extensive experience with music licensing, DSW has blatantly failed to follow the law when it comes to using music in the DSW Videos posted on DSW's social media accounts.  Plaintiffs have discovered over two hundred instances of unauthorized use of WMG's musical works.

46.     Some examples include the following:

(a)     **Figure 1** is a screen capture of a DSW Video created by or at the direction of DSW that was posted on DSW's TikTok account promoting "Barbie Inspired Looks with DSW" featuring the copyrighted work "Barbie World (with Aqua)" by Nicki Minaj, Ice Spice and Aqua.



**Figure 1**

(b)      **Figure 2** is a screen capture of a DSW Video posted on DSW's TikTok account with the caption "we know a certain concert these looks would be perfect for" featuring "Style" by Taylor Swift.



**Figure 2**

(c)     **Figure 3** is a screen capture of a DSW Video posted on DSW's Instagram account under the heading "Yo Gotti • Pose (feat. Megan Thee Stallion, Lil Uzi Vert)." In it, a woman models various outfits featuring bright white sneakers, synchronized to 15 seconds of Yo Gotti's "Pose".



**Figure 3**

None of the foregoing uses were authorized by or licensed from Plaintiffs, and DSW did not compensate Plaintiffs in any manner for the unauthorized use of Plaintiffs' Works.

47.     Recognizing the importance of music to their social media presence and brand, DSW's posts often specifically identify the Plaintiffs' Work featured in the DSW Videos (such as in **Figure 3** above, which features the heading "Yo Gotti • Pose (feat. Megan Thee Stallion, Lil Uzi Vert)"). On the other hand, many of the DSW Videos inexplicably purport to contain "Original audio" – notwithstanding the clear use of Plaintiffs' music.

48.     DSW has furthered its global brand awareness through the broad dissemination of the infringing DSW Videos on social media. For example, DSW's Instagram account has ***965 thousand*** followers.

49.     DSW's infringement was willful.  DSW is a sophisticated company that, upon information and belief, has knowledge of copyright law, experience licensing music, and has availed itself of the judicial system to protect and enforce its own intellectual property rights. Moreover, the social media platforms on which DSW posted the infringing DSW Videos expressly state that account holders have no right to use music without proper authorization, and in particular, that music cannot be used in connection with commercial activities.  For example, the Instagram Terms of Use incorporate "Music Guidelines," which are maintained in the "Legal" section of the Facebook website.  Those Music Guidelines expressly provide as follows: "Use of music for commercial or non-personal purposes in particular is prohibited unless you have obtained appropriate licenses."[4]  Similarly, the TikTok Terms of Service unequivocally state that no rights are granted respecting use of sound recordings and musical works:

> NO RIGHTS ARE LICENSED WITH RESPECT TO SOUND RECORDINGS AND THE MUSICAL WORKS EMBODIED THEREIN THAT ARE MADE AVAILABLE FROM OR THROUGH THE SERVICE.[5]

Upon information and belief, DSW was aware of these terms, but elected to ignore them.

50.     Courts specifically have held that the same type of conduct engaged in by DSW constitutes copyright infringement.  On July 11, 2022, United States District Judge William P. Dimitrouleas granted partial summary judgment to another music company, Universal Music Group, in its action against Bang Energy.[6]  In its order, the court found that it was "undisputed that [Bang Energy] posted approximately 140 TikTok videos utilizing portions of [Universal

---

[4] *Terms of Use*, Instagram, http://help.instagram.com/581066165581870 (incorporating Music Guidelines) (last visited April 29, 2025); *Music Guidelines*, Facebook, https://www.facebook.com/legal/music_guidelines (last visited April 29, 2025).

[5] *Terms of Service*, TikTok, https://www.tiktok.com/legal/terms-of-service?lang=en (last visited April 29, 2025).

[6] *UMG Recs.*, 2022 WL 2670339, at *7.

Music Group's] copyrighted works," and concluded that the Bang defendants were liable for direct copyright infringement as a matter of law.[7]  Similarly, on September 14, 2022, Judge Dimitrouleas granted partial summary judgment to another music company, Sony Music Entertainment, in its separate action against Bang Energy, concluding that the Bang defendants were liable for both direct and vicarious copyright infringement as a matter of law.[8]

## COUNT I: COPYRIGHT INFRINGEMENT
### (Against All Defendants)

51.     Plaintiffs incorporate paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52.     Defendants' creation, posting/reposting, and/or streaming of the DSW Videos infringe Plaintiffs' copyrights.  Among other things, Defendants have unlawfully reproduced, prepared derivative works from, distributed, publicly performed, and/or publicly performed by means of a digital audio transmission, the copyrighted works listed on Schedule A without authorization, in violation of 17 U.S.C. § 106(1), (2), (3), (4), and/or (6).

53.     Defendants' acts of infringement have been knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

54.     Thus, because Defendants directly posted the DSW Videos utilizing exact copies of portions of Plaintiffs' copyrighted works without authorization from Plaintiffs, Defendants are liable for direct copyright infringement.  *See Sony*, 2022 WL 4771858, at *8 ("it is undisputed that Defendants directly posted approximately 286 social media videos utilizing portions of Plaintiffs' copyrighted works [without authorization] . . . Courts have found that the unauthorized reproduction, distribution and public performance of sound recordings via the

---

[7] *Id.* at * 7.
[8] *Sony*, 2022 WL 4771858, at *7-13.

internet violates the Copyright Act . . . Both elements of a direct copyright infringement claim having been established based upon the undisputed material facts . . . Plaintiffs are entitled to partial summary judgment against Defendants").

55.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each musical work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

56.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

57.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting the infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT II: CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Against All Defendants)

58.     Plaintiffs incorporate paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59.     As detailed above, the third-party social media influencers who created and distributed the DSW Videos have likewise infringed Plaintiffs' copyrights, and Defendants are liable as contributory copyright infringers for the infringing acts of these influencers.

Additionally, or alternatively, Defendants are liable as contributory copyright infringers by making the DSW Videos available to the users and subscribers of the social media platforms referenced above.

60. By promoting and/or assisting with the creation of the infringing DSW Videos and/or by causing them to be copied, made available, and transmitted over the social media platforms referenced above, Defendants materially contributed to the infringing reproduction, preparation of derivative works, distribution, and/or public performance of the copyrighted works contained in the DSW Videos, including but not limited to the musical works listed in Schedule A. Defendants have actual and constructive knowledge of such infringement, including actual or constructive knowledge that no Plaintiff has granted the rights to include such Plaintiff's copyrighted musical works in the DSW Videos. In addition, Defendants have induced such infringement, including by promoting such infringement through the compensation paid to social media collaborators and other social media influencers, posting and/or reposting the infringing DSW Videos, and specifically referring to the sound recordings and musical compositions used in the infringing DSW Videos.

61. Defendants' acts of contributory infringement are knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

62. As a direct and proximate result of Defendants' contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each musical work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

63.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

64.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting the contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT III: VICARIOUS COPYRIGHT INFRINGEMENT
### (Against All Defendants)

65.     Plaintiffs incorporate paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66.     As detailed above, third-party social media influencers who created and distributed the DSW Videos have likewise infringed Plaintiffs' copyrights, and Defendants are vicariously liable for the infringing acts of these influencers.  Additionally, or alternatively, Defendants are liable as vicarious copyright infringers by making the DSW Videos available to the users and subscribers of the social media platforms referenced above.

67.     Defendants have exercised the right, ability, and authority to control and supervise the placement of the infringing DSW Videos on the social media platforms referenced above.  Defendants also have the ability to remove the infringing DSW Videos from each platform.  Defendants receive a direct financial benefit from the infringing reproduction, preparation of derivative works, distribution, and/or public performance of the copyrighted works contained in the DSW Videos, including but not limited to the musical works listed in Schedule A, including (among other financial benefits) increased brand recognition and product sales.

68.     Defendants' acts of vicarious infringement are knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

69.     Thus, because Defendants had the ability to control, supervise, and remove the infringing DSW Videos posted by third parties, and they received a direct financial benefit from the distribution and/or public performance of the copyrighted works contained in the infringing DSW Videos, Defendants are liable for vicarious copyright infringement.

70.     As a direct and proximate result of Defendants' vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each musical work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

71.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

72.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting the vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a)     for a permanent injunction requiring that Defendants, and their officers, agents, employees, attorneys, and others in active concert or participation with each or any of them,

cease infringing, or causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of, any of Plaintiffs' copyrights protected by the Copyright Act, whether now in existence or hereafter created;

(b)  for Plaintiffs' actual damages and Defendants' profits from infringement, pursuant to 17 U.S.C. § 504(b), in amounts to be proven at trial, or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), for statutory damages up to the maximum amount of $150,000 per infringed musical work, or such other amounts as may be proper under 17 U.S.C. § 504(c);

(c)  for Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. §§ 505 and 1203(b)(4), (5) and otherwise;

(d)  for pre-judgment and post-judgment interest; and

(e)  for such other and further relief as the Court may deem just and proper.

Dated this 1st day of May, 2025.

Respectfully submitted,

**BENSON & SESSER, LLC**

<u>/s/ Mark C. Melko</u>
Mark C. Melko (#0069396) Trial Counsel
William B. Benson (#0047181) Co-counsel
421 West State Street, Suite 227
Columbus, Ohio 43215
T&F: (614) 696-6490
e-mail: mmelko@benson.law
e-mail: bill@benson.law

-and-

David A. Steinberg (*pro hac vice forthcoming*)
Bradley J. Mullins (*pro hac vice forthcoming*)
James D. Berkley (*pro hac vice forthcoming*)
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California 90067
Tel.: (310) 312-2000
Fax: (310) 312-3100
e-mail: das@msk.com
e-mail: bym@msk.com
e-mail: jdb@msk.com

*Attorneys for Plaintiffs*

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs Atlantic Recording Corporation, Bad Boy Records LLC, Big Beat Records Inc., Elektra Entertainment Group Inc., Elektra Entertainment LLC, Rhino Entertainment LLC, Warner Music International Services Limited, Warner Music Nashville LLC, Warner Records Inc., Cotillion Music, Inc., Gene Autry's Western Music Publishing Co., Unichappell Music Inc., W Chappell Music Corp., W.C.M. Music Corp., Warner Chappell Music, Inc., and Warner-Tamerlane Publishing Corp. hereby demand a trial by jury on all matters and issues so triable.

<u>/s/ Mark C. Melko</u>
Mark C. Melko (#0069396)
William B. Benson (#0047181)
421 West State Street, Suite 227
Columbus, Ohio 43215
T&F: (614) 696-6490
e-mail: mmelko@benson.law
e-mail: bill@benson.law