**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

ATLANTIC RECORDING
CORPORATION, *et al.*,

          **Plaintiffs,**

   **v.**

DESIGNER BRANDS INC., *et al.*,

          **Defendants.**

:
:
:
:
:
:
:
:
:
:
:
:

**Case No. 2:25-cv-00479
Judge Michael H. Watson
Magistrate Judge S. Courter M. Shimeall**

<u>**OPINON AND ORDER**</u>

This matter is before the Court on Defendants' motion to compel.  (ECF No. 42 (unsealed version).)  For the following reasons, Defendants' motion is **GRANTED**.

**I.      BACKGROUND**

Plaintiffs are a group of music and publishing companies collectively known as Warner Music Group.  (ECF No. 19, PAGEID #: 121.)  The companies produce, manufacture, distribute, sell, and license music—such as, according to the Amended Complaint, music by famous artists like Bruno Mars, Cardi B, Dua Lipa, Ed Sheeran, Fleetwood Mac, and Madonna.  (*Id.*)  Plaintiffs allege that Defendants are a group of related entities that work together to produce and sell footwear, through brands and businesses like Designer Shoe Warehouse, The Shoe Company, Topo Athletic, and Keds.  (*Id.*)  According to the Plaintiffs, the Defendants have moved away from traditional advertising, and have devoted more of their time and resources to promoting their brands through social media platforms, such as Instagram and TikTok, and, notably, have done so through well-known social media "influencers."  (*Id.* at PAGEID # 122.)

Plaintiffs contend that the Defendants' decision to, as the Plaintiffs explain it, rely more on less traditional advertising has had a detrimental effect on Plaintiffs' intellectual property rights. (*Id.* at PAGEID #: 122–23.)  Specifically, the Amended Complaint alleges that Defendants have allowed their influencers to post social-media content on Defendants' behalf that contains Plaintiffs' musical works—and, key to Plaintiffs' claims, they allege that Defendants and their alleged influencers have done so without first obtaining permission, or otherwise compensating Plaintiffs for the use of their intellectual property.  (*Id.*)

Plaintiffs filed their original complaint with the above allegations on May 1, 2025.  (ECF No. 1.)  They filed an amended complaint on July 1, 2025.  (ECF No. 19.)  Defendants filed their answer on July 14, 2025.  (ECF No. 20.)  Thereafter, the parties informed the Court of several discovery issues, and the matter eventually came before the Court for a discovery conference on December 16, 2026.  As a result of the conference, the parties were directed to file cross motions to compel.  The parties filed their respective motions to compel on December 29, 2025.  (ECF No. 41 (Plaintiffs' motion); ECF No. 42 (Defendants').)  This matter came before the Court for a telephonic discovery hearing on April 9, 2026.  Following the hearing, the scope of the dispute has been narrowed.  Plaintiffs' motion to compel (ECF No. 41) has been denied without prejudice. (ECF No. 61.)  That leaves Defendants' motion to compel.

The parties' dispute at present centers on what they refer to as the "social media agreements."  By way of brief background, as indicated, Plaintiffs claim that Defendants (through their influencers) have infringed on Plaintiffs' intellectual property rights by posting Plaintiffs' music on social media without approval.  Defendants note, however, that Plaintiffs have social media agreements wherein Plaintiffs license their music to the social media companies at issue, thereby allowing social media users to use Plaintiffs' music.  Plaintiffs acknowledge the existence

of the agreements, but the parties dispute their import to this case.  Defendants contend that the agreements define the scope of the claims at issue, support their affirmative defenses, and help define the amount of damages at issue.  Plaintiffs respond that Defendants overstate the importance of the agreements, and that the agreements don't have a whole lot to do with the alleged infringing conduct now at issue.

With that as background, the parties agreed at a discovery conference that many, if not all, of the social media agreements at issue have been produced.  They further agreed that the only live issue remaining for resolution of Defendants' motion is the parties' dispute regarding the extent of Plaintiffs' financial-information redactions from the social media agreements.

## II.  STANDARD

Federal Rule of Civil Procedure 26(b)(1), which sets forth the permissible scope of discovery, provides that parties may obtain discovery about any nonprivileged matter that is relevant to a claim or defense, and that is proportional to the needs of the case.  Determining the scope of discovery is within the Court's discretion.  *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998).  "The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad."  *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).  "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant."  *Guinn v. Mount Carmel Health Sys.*, No. 2:09-cv-226, 2010 WL 2927254, at *5 (S.D. Ohio July 23, 2010) (citation modified).  The burden to demonstrate that the requested discovery would be disproportional to the needs of the case rests with the objecting party.  *Bros. Trading Co. v. Goodman Factors*, No. 1:14-CV-975, 2016 WL 9781140, at *2 (S.D. Ohio Mar. 2, 2016).

3

## III.    DISCUSSION

Defendants originally moved to compel the production of Plaintiffs' agreements with social media companies.  Based on the parties' call with the Court on April 9, 2026, the Court understands that the agreements have been produced—but not in their entirety.  According to the parties' briefing, and their representations on the call, the dispute has been narrowed, and it now centers on the redaction of information in the agreements relating to money that the social media platforms have paid to Plaintiffs for the use of Plaintiffs' music.  Defendants move to compel the production of that information with the instant motion.  Plaintiffs object on two grounds—relevance and concerns about the disclosure of sensitive business information.  The Court addresses each in turn.

### A.  Relevance

Defendants contend that the financial information in the social media agreements relates to damages.  That is, they argue, the redacted information Defendants seek relates to whether Plaintiffs have been paid, or are being paid, for conduct like the alleged infringing conduct at issue in this case.  As Defendants see it, this information is probative of any damages that might come in the future.  The agreements will show whether and how much Plaintiffs get paid for the use of their music.  According to Defendants, if Plaintiffs have been paid for any of the allegedly infringing conduct, this would negate, or at least reduce, any of the possible damages Plaintiffs could collect.  Moreover, Defendants argue, the social media agreements' information regarding how much Plaintiffs get paid for "non-commercial" uses of their music will further be probative of the potential damages in this case.  Plaintiffs counter that any payments they have received under the agreements do not necessarily relate to any of the alleged infringing conduct here.

Defendants have the better of the arguments.  Plaintiffs bring a lawsuit and claim damages as a result of Defendants' conduct.  Information related to damages is therefore relevant to this

4

case—this may include the financial information in the social media agreements, particularly if, as Defendants argue, that information would in any way contribute to Defendants' arguments seeking to reduce, or even negate, the possible damages in this case, or would help to establish a baseline for damages calculations otherwise. *See, e.g.*, Fed R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim *or defense . . . .*" (emphasis added)); *see also, e.g.*, *Safelite Grp., Inc. v. Lockridge*, No. 2:21-CV-04558, 2023 WL 2692344, at *4 (S.D. Ohio Mar. 29, 2023) (granting a defendant's motion to compel requiring the plaintiff to disclose information related to damages); *Sinomax USA, Inc. v. Am. Signature Inc.*, No. 2:21-CV-3925, 2022 WL 1301683, at *4 (S.D. Ohio May 2, 2022) ("[T]o the extent Plaintiff has damages information—including an estimation of 'Plaintiff's damages,' *documents on which damages computations will be based*, or the general computation methodology—Plaintiff is ORDERED to produce that information . . . ." (emphasis added)).

Plaintiffs' contention that the sought-after financial information might not illuminate any arguments or defenses regarding damages does not convince the Court otherwise. That issue—whether the information sought is ultimately helpful as to damages—can and should be dealt with in due course, likely at a later stage. At issue now is Defendants' access to information they'd like to try to use toward their defense, or the mitigation of damages. They're entitled to such information. At this point, it suffices that information related to damages claims and defenses is relevant for the purposes of discovery. *See, e.g.*, *Doe 162 v. Ohio State Univ.*, No. 2:23-CV-2991, 2026 WL 216813, at *7 (S.D. Ohio Jan. 28, 2026) (Watson, J.) (compiling cases about "relevance" being construed liberally at this stage, and noting: "Essentially, a request for discovery seeks relevant information if there is any possibility that the information sought *may be relevant* to a claim or defense of any party in the action." (emphasis added)).

### B. Redactions

Even setting aside relevance, the parties also disagree as to whether the protective order in this action is sufficient to address the Plaintiffs' confidentiality concerns with respect to the financial information in the social media agreements. Defendants argue that Plaintiffs should be compelled to disclose versions of the social media agreements with unredacted financial information subject to the protective order, and Plaintiffs argue that no protective order would sufficiently protect the financial information within the agreements. Stated another way, Plaintiffs contend that the information they redact is "competitively sensitive." (ECF No. 48, PAGEID #: 919 (unsealed version).)

Plaintiffs might be right that the information is competitively sensitive, but that does not justify withholding otherwise relevant information to which, as the Court has explained, Defendants are entitled. *See, e.g.*, *ADT Sec. Servs., Inc. v. Alarm Co.*, LLC, No. 05-2779 MV, 2006 WL 8435887, at *5 (W.D. Tenn. June 12, 2006) ("Because the requested information is relevant [to damages] and a protective order would adequately safeguard the defendants' business records, the motion to compel is granted . . . ."); *Brake Parts, Inc. v. Lewis*, No. CIV.A. 09-132-KSF, 2009 WL 1939039, at *5 (E.D. Ky. July 6, 2009) (concluding that "a protective order is already in place that should guarantee [the party opposing disclosure] the insurance it seeks to protect the confidentiality of any trade secret, proprietary, and/or business information disclosed . . . .").

Parties often disclose this kind of information in discovery, and they do so through the use of protective orders. To that end, protective orders exist to facilitate the disclosure of (what one side at least might argue is) sensitive information. *See, e.g.*, *Cardinal Health 200, LLC v. Cellex, Inc.*, No. 2:24-CV-3901, 2025 WL 2426338, at *12 (S.D. Ohio Aug. 22, 2025) (noting that relevant

6

information, regardless if it's proprietary or sensitive, should be turned over—especially "considering the parties have a protective order in place to safeguard any confidential business information disclosed during litigation"); *see also Tween Brands Investment, LLC v. Bluestar Alliance, LLC*, No. 2:15-CV-2663, 2015 WL 6955177, at *2 (S.D. Ohio Nov. 10, 2015) (explaining that "producing sensitive information which is subject to a protective order restricting its dissemination and use renders redaction both unnecessary and potentially disruptive to the orderly resolution of the case" (citation omitted)).  This case is no different.  There is a protective order in place to account for the very issues Plaintiffs raise.  (*See* ECF No. 29.)  Plaintiffs need to disclose the unredacted agreements.

Plaintiffs contend the confidentiality concerns are heightened here because "Defendants are in active litigation with Plaintiffs' competitors about some of the very same issues[]" and, Plaintiffs argue, "it is difficult to believe that Defendants (or their counsel) will fully be able to keep information regarding agreements with one party wholly separate from information regarding agreements with a competitor."  (ECF No. 48, PAGEID #: 931.)  Plaintiffs represent that, on at least one occasion, Defendants turned over documents to Plaintiffs that were meant to be disclosed to counsel for Plaintiffs' competitors in a different case.  (*Id.* at PAGEID #: 931–32.)  In other words, Plaintiffs argue, no protective order can safeguard against the possible disclosure of sensitive information under these circumstances.

For a few reasons, the Court is not persuaded that this should prevent the discovery of relevant information in this case.  Taking Plaintiffs' argument to its logical conclusion would mean no protective order would ever be good enough to facilitate disclosure when one party to an action is simultaneously litigating against the opposing party's competitor in a separate action.  But that, of course, is not the case—parties use protective orders all the time to disclose sensitive

7

information, even directly to their competitors.  *See, e.g.*, *Worldwide Distribution, LLLP v. Everlotus Indus. Corp*, No. 1:16 MC 67, 2017 WL 553305, at \*3 (N.D. Ohio Feb. 10, 2017) ("Courts frequently use 'attorneys' eyes only' protective orders when confidential information is to be provided to a competitor.")  Indeed, even the case Plaintiffs cite in support of their argument for why the damages information should not be turned over supports the Court's conclusion.  *See Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, No. 12CV00787FLWLHG, 2017 WL 3624262, at \*4 (D.N.J. Apr. 26, 2017), *report and recommendation adopted*, No. CV 12-787 (FLW)(LHG), 2017 WL 3668391 (D.N.J. Aug. 23, 2017) (explaining why the "unliteral" redaction of documents is disfavored in federal litigation; and that the redaction of some information where the attorneys represent other parties in related litigation might be justified—but only where, unlike here, such information is "<u>not relevant</u> to any of the issues in the case" (emphasis in original)).  Additionally, so far as the Court can tell, the information Plaintiffs note was disclosed in the other case was comprised of Defendants' own documents—not Plaintiffs', nor anyone else's.

If Defendants violate the protective order, the Court will address the separate issue of Defendants' violation of a Court order at the appropriate time.  If, for some reason, Plaintiffs believe that the protective order should be altered in some manner to account further for their concerns, they can take that up with Defendants and reach a resolution on that issue.  In the event the parties cannot reach an agreement on the protective order, if one needs to be made, they are directed to contact chambers for an informal discovery call to resolve the dispute.  In the meantime, discovery needs to proceed.

For these reasons, Defendants' motion to compel on this issue is granted, and Plaintiffs are **ORDERED** to disclose unredacted versions of the social media agreements **within 14 days of the date of this Order**.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel (ECF No. 42) is **GRANTED** in accordance with this Order.

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**