**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

ATLANTIC RECORDING CORPORATION, BAD BOY RECORDS LLC, BIG BEAT RECORDS INC., ELEKTRA ENTERTAINMENT GROUP INC., ELEKTRA ENTERTAINMENT LLC, RHINO ENTERTAINMENT LLC, WARNER MUSIC INTERNATIONAL SERVICES LIMITED, WARNER MUSIC NASHVILLE LLC, WARNER RECORDS INC., COTILLION MUSIC, INC., GENE AUTRY'S WESTERN MUSIC PUBLISHING CO., UNICHAPPELL MUSIC INC., W CHAPPELL MUSIC CORP., W.C.M. MUSIC CORP., WARNER CHAPPELL MUSIC, INC., and WARNER-TAMERLANE PUBLISHING CORP.,

Plaintiffs,

v.

DESIGNER BRANDS INC., DSW SHOE WAREHOUSE, INC., TOPO ATHLETIC LLC, and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:25-cv-00479-MHW-SCS

Judge Michael H. Watson

Magistrate Judge S. Courter Shimeall

**DEFENDANTS' MOTION AND MEMORANDUM FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS II (CONTRIBUTORY INFRINGEMENT) AND III (VICARIOUS INFRINGEMENT) OF THE AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

---

Defendants Designer Brands Inc., DSW Shoe Warehouse, Inc., and Topo Athletic LLC (collectively, "Defendants") respectfully move this Court for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to Counts II (contributory infringement) and III (vicarious infringement) of Plaintiffs' First Amended Complaint. Dkt. 19 ("FAC" or "Amended Complaint"). As set forth in the following Memorandum of Law, Plaintiffs fail to allege (a) an underlying act of direct infringement by a third party, which is fatal to both their contributory and vicarious infringement claims (Counts II and III); (b) facts adequate to establish Defendants'

knowledge or inducement of a third party's purported direct infringement, which is fatal to Plaintiffs' contributory infringement claim (Count II); and (c) the requisite "direct" and "obvious" financial benefit to Defendants from a third party's purported direct infringement, which is fatal to Plaintiffs' vicarious infringement claim (Count III). The grounds for this Motion are set forth in the accompanying Memorandum in Support.

Date: September 21, 2026

Respectfully submitted,

**BARNES & THORNBURG LLP**

*By: /s/ David M. DeVillers*

David M. DeVillers (0059456), Trial Attorney
Kristopher J. Armstrong (0077799), Co-Counsel
41 S. High Street, Suite 3300
Columbus, Ohio 43215
Tel: (614) 628-0096
Fax: (614) 628-1433
e-mail: ddevillers@btlaw.com
e-mail: kristopher.armstrong@btlaw.com

-and-

Jeff M. Barron (pro hac vice)
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 231-7735
Fax: (317) 231-7433
e-mail: jeff.barron@btlaw.com

-and-

Will Craver (pro hac vice forthcoming)
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Tel: (310) 284-3880
Fax: (310) 284-3894
e-mail: will.craver@btlaw.com

-and-

Christina Hassel

**HAHN LOESER & PARKS LLP**
200 Public Square Suite 2800
Cleveland, OH 44114
Tel: (216) 621-0150
Fax: (216) 241-2824
e-mail: chassel@hahnlaw.com
*Counsel for Defendants*

# TABLE OF CONTENTS

**MEMORANDUM OF LAW** .......... 1

I. **INTRODUCTION** .......... 1

II. **THE RELEVANT ALLEGATIONS IN THE AMENDED COMPLAINT** .......... 2

III. **THE LAW OF SECONDARY COPYRIGHT INFRINGEMENT** .......... 7

A. Contributory And Vicarious Infringement Both Require Plausible Allegations Of Direct Infringement By A Third Party .......... 7

B. Contributory Infringement After *Cox Communications* .......... 7

C. Vicarious Infringement Requires a Direct Financial Benefit and Control .......... 9

IV. **ARGUMENT** .......... 11

A. Plaintiffs' Contributory and Vicarious Infringement Claims Fail Because Plaintiffs Fail to Allege a Predicate Underlying Direct Act of Infringement .......... 12

B. Plaintiffs' Contributory Infringement Claim Fails Because Plaintiffs Fail to Allege Adequate Knowledge of The Infringement or Inducement Thereof. .......... 12

1. Plaintiffs Fail to Allege Knowledge of the Alleged Infringement .......... 13

2. Plaintiffs Fail to Allege Inducement of the Purport Infringement .......... 14

C. Plaintiffs' Vicarious Infringement Claim Fails Because Plaintiffs Fail to Allege a Direct Financial Benefit from any Alleged Third-Party Infringement .......... 16

V. **CONCLUSION** .......... 20

**MEMORANDUM OF LAW**

## I. INTRODUCTION

This case is about the limits of liability for alleged copyright infringement based on posts on social media platforms like TikTok and Instagram. Plaintiffs have struck deals with TikTok, Instagram, Facebook and other platforms to create music libraries that give users the option to add music to their social media posts. These music libraries contain Plaintiffs' copyrighted music along with other music and audio. When a user creates a post, the platform offers the user the option to select music or other audio from the platform's library to stream with the user's uploaded content.[1]

Although Plaintiffs and the platforms publicly touted the ability to use trending music as an exciting new feature for users, Plaintiffs now claim that certain users—Defendants and people who are styled as "influencers"—infringed their copyrights when they displayed Defendants' products on social media posts alongside music from the platforms' music libraries. According to Plaintiffs, (a) Defendants directly infringed their copyrights with Defendants' own posts and (b) Defendants are contributorily or vicariously liable for any direct infringements by platform(s) (when they, *e.g.*, stream music to accompany Defendants' accused posts) and/or by influencers who allegedly work with Defendants.

Defendants will address Plaintiffs' direct infringement claims against them in the future; this motion takes aim at Plaintiffs' claims for contributory and vicarious copyright infringement. *See* FAC at PAGEID139-142 (Counts II and III). Claims for contributory and vicarious infringement require allegations of an underlying act of direct infringement by a third party ***plus*** specific acts by Defendants related to that underlying act of infringement. Plaintiffs' Amended

---

[1] A good explanation of Instagram's and Facebook's music libraries is in a recent decision by the Eastern District of Michigan granting Meta's motion to dismiss contributory and vicarious infringement claims against Meta based on Eminem's music. *See Eight Mile Style, LLC v. Meta Platforms, Inc.*, No. 2:25-cv-11618, 2026 WL 1735026, at *1 (E.D. Mich. June 16, 2026).

Complaint fails both prongs: there is no alleged act of direct infringement by an identified third party and Plaintiffs fail to allege facts sufficient to tie Defendants to any hypothetical third-party infringement to meet the "plus" prong for contributory or vicarious infringement claims.[2]

Plaintiffs should have been aware of these defects in their contributory and vicarious infringement claims prior to the deadline to amend their pleadings. The Supreme Court issued two opinions in 2026 that reject Plaintiffs' contributory infringement theory and, in the course of those rulings, denied *certiorari* and left in place a Fourth Circuit ruling that undercuts Plaintiffs' vicarious infringement theory. Plaintiffs never sought leave to amend to try to address these legal issues or remedy the other defects in their contributory and vicarious infringement claims. Now, the deadline for amendment has passed. Dkts. 78, 92. The time is ripe for the Court to trim this case, streamline remaining discovery, and focus future motion practice (and/or trial) by entering judgment on the pleadings in Defendants' favor on Counts II and III of the Amended Complaint.

## II. THE RELEVANT ALLEGATIONS IN THE AMENDED COMPLAINT

Plaintiffs' allegations in support of their claims of direct infringement by Defendants (Count I) are not at issue for the purposes of this motion. FAC at PAGEID137-139 (¶¶ 53-59, Count I). Plaintiffs' Amended Complaint, however, lumps allegations concerning Defendants' purported direct infringements via their own posts together with allegations of indirect infringement by Defendants based on posts and conduct by third parties. *Id.* at PAGEID122 (¶ 4).

---

[2] In addition to failing to allege an underlying act of direct infringement by a third party, Plaintiffs fail to state a contributory infringement claim because they fail to allege Defendants' knowledge of a third party's underlying act of infringement or that Defendants induced ***an infringement***, which are contrary to *Cox Communications, Inc., et al. v. Sony Music Entertainment, et al.* 607 U.S. 583 (2026) ("*Cox Communications*"). For vicarious infringement, Plaintiffs also fail to allege that Defendants had an obvious and direct financial interest in ***the infringement***, which is contrary to *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ("*Grokster*"), the Fourth Circuit's decision in *Sony Music Entertainment v. Cox Communications, Inc.*, 93 F.4th 222 (4th Cir. 2024), *cert. denied* as to appeal of vicarious liability ruling, 145 S. Ct. 2844 (2025), and Sixth Circuit law.

Plaintiffs indiscriminately call all these accused posts, "Defendants' Videos." *Id.* However, only the Amended Complaint's allegations regarding third-party conduct are relevant to Plaintiffs' contributory and vicarious infringement claims (and thus this motion). With this framework in mind, the relevant allegations regarding "Defendants' Videos" are the following:

***First***, Defendants' position has been that Plaintiffs have no proper direct infringement claims against them based on music streamed from a platform's music library; at most, Defendants might be alleged to contribute to or be vicariously liable for an underlying act of direct infringement by the platforms. *See, e.g.,* Dkt. 42 (redacted version of Defendants' motion to compel) at PAGEID336; *accord Atlantic Recording Corporation v. Spinrilla, LLC*, 506 F.Supp.3d 1294, 1308-1316 (2020) (granting summary judgment to two of the plaintiffs in this case that streaming by a platform constitutes direct infringement by the platform). Indeed, Defendants sought Plaintiffs' Agreements with the platforms in part because Defendants believed that they may bar Plaintiffs from pursuing direct infringement claims against the platforms. *Id*. The Amended Complaint is consistent with Defendants' position that Plaintiffs cannot sue the social media platforms for direct infringement of their copyrights. The Amended Complaint contains several allegations regarding social media platforms, including Instagram and TikTok, *see, e.g.,* FAC at PAGEID122, 136-137 (¶¶ 4, 51), but it does not contain any allegation that any social media platform directly infringes Plaintiffs' copyrights. FAC at PAGEID122-144 (entirety); Dkt. 19-1 at PAGEID145-159 (entirety). Indeed, the only allegations that might refer to improper conduct by a platform are the vague assertions in Paragraphs 61 and 68 of the Amended Complaint that "[a]dditionally, or alternatively, Defendants are liable as [contributory/vicarious] copyright infringers by making Defendants' Videos available to users and subscribers of the social media platforms referenced above." FAC at PAGEID139, 140-141.

***Second***, the Amended Complaint generally alleges that Defendants work with influencers and that influencer posts infringe Plaintiffs' copyrights, but it does not identify a single accused influencer post. *See, e.g.,* FAC at PAGEID122, 129-131, 139-140 (¶¶ 4, 39-44, 61-62, 68-69). The Amended Complaint also attached "Schedule A" (Dkt. 19-1), which is alleged to be "an illustrative, non-exhaustive list of sound recordings and musical composition[s]" allegedly infringed by Defendants. FAC at PAGEID128 (¶ 36). Every accused post identified in Schedule A is alleged to have been "Posted By" Defendants or an entity or brand associated with Defendants (*e.g.*, "Keds" or "The Shoe Company[3]"). Dkt. 19-1 at PAGEID145-159. Schedule A does not identify any accused post that was purportedly "Posted By" an alleged influencer. *Id.*

***Third***, the Amended Complaint contains several conclusory allegations concerning Defendants' alleged relationships with influencers. At no point, however, does the Amended Complaint contain specific factual allegations identifying any particular influencer and/or Defendants' involvement in a specific act of alleged infringement by an influencer. Rather, the Amended Complaint alleges only the following:

- Defendants "have shifted much of their marketing focus from traditional advertising to promoting their products through social media platforms such as Instagram and TikTok, as well as via paid partnerships with well-known social media influencers" (FAC at PAGEID122 [¶ 4]);
- "Knowing that popular music is the best way to capture the attention of its targeted audience, Defendants and their social media influencers have incorporated" Plaintiffs' copyrighted music (*id.*);
- Videos from Defendants and influencers "are an integral part of Defendants' promotional, marketing, and branding strategy" (*id.*);
- "Defendants and their influencer partners have failed to seek permission or pay for the use" of Plaintiffs' copyrights in "Defendants' videos" (*id.* at PAGEID122-123 [¶ 5]);

---

[3] Plaintiffs' allegations against The Shoe Company are subject to Defendants' pending Motion to Dismiss for Failure to Join an Indispensable Party, which is pending. Dkt. 68.

- That social media "has been a growing part of Defendants' advertising model, where music has equally been at the forefront," purporting to quote a press article from 2012 and a "recent marketing campaign" (*id.* at PAGEID129 [¶ 39]);

- "Upon information and belief, Defendants devote substantial resources to their social media advertising and promotional efforts … [and] partner with social media influencers to promote their clothing and brands" (*id.* [¶ 40]);

- That "DSW, for example," has created "multiple positions" responsible for working with or managing influencers on social media and Defendants "collaborate with social media influencers" (*id.* [¶ 41]);

- "Popular music is an important part of" Defendants' "social media and branding efforts," including with "influencers" (*id.* at PAGEID129-130 [¶ 42]);

- That Defendants' and influencer videos "showcas[e] Defendants' footwear, clothing and accessories, synchronized to an audio track of a popular commercially available sound recording and musical composition" that "generally run the full length" of the video and/or feature "the most recognizable portion of the featured musical work" (*id.*);

- "Upon information and belief, Defendants maintain access to and/or track the posting and delivery of social media and other digital media materials throughout the company" (*id.*);

- "Upon information and belief, Defendants professional staff are directly involved in … directly working with and overseeing social media influencers, including by providing advice and direction as to the content" of their videos, "encouraging … influencers to create video content and feature Defendants' products" in "Defendants' Videos," and "actively reviewing Defendants' Videos that are influencer-made and" posting influencer videos "on Defendants' own social media pages" (*id.* at PAGEID130 [¶ 43]);

- "Upon information and belief, in exchange for creating and distributing promotional videos, Defendants provide their influencers with monetary compensation, either directly or through commissions and/or rebates" (*id.* at PAGEID130-131 [¶ 44]); and,

- "Upon information and belief, Defendants enter into comprehensive contracts with many leading social media influencers, including the influencers who are featured in Defendants' Videos (*id.*).

***Fourth***, the Amended Complaint contains only conclusory allegations that unidentified influencers have infringed unidentified copyrights purportedly owned by Plaintiffs. *Id.* at PAGEID139, 140-141 (¶¶ 61, 68). The Amended Complaint also alleges a series of alternative, contradictory grounds for its contributory infringement claim:

> By promoting and/or assisting with the creation of Defendants' Videos and/or by causing them to be copied, made available, and transmitted over the social media platforms referenced above, Defendants materially contributed to the infringing reproduction, preparation of derivative works, distribution, and/or public performance of the copyrighted works contained in Defendants' Videos, including but not limited to the musical works listed in Schedule A. Defendants have actual and constructive knowledge of such infringement, including actual or constructive knowledge that no Plaintiff has granted the rights to include such Plaintiff's copyrighted musical works in Defendants' Videos. In addition, Defendants have induced such infringement, including by promoting such infringement through the compensation paid to social media collaborators and other social media influencers, posting and/or reposting Defendants' Videos, and specifically referring to the sound recordings and musical compositions used in Defendants' Videos.

*Id.* at PAGEID139 (¶ 62). Plaintiffs' assertions that Defendants purportedly re-posted or shared certain (unspecified) influencer videos on Defendants' own accounts are simply a restatement of Plaintiffs' direct infringement claims against Defendants. But Plaintiffs do not identify any instance in which Defendants purportedly encouraged, promoted, or told any (unidentified) influencer to make any (unidentified) post that allegedly infringed one of their (unidentified) copyrights on any influencer account.

For vicarious infringement, Plaintiffs allege the following regarding Defendants' alleged control over and purported direct financial benefits from purported third-party infringement(s):

> Defendants have exercised the right, ability, and authority to control and supervise the placement of Defendants' Videos on the social media platforms referenced above. Defendants also have the ability to remove Defendants' Videos from each platform. Defendants receive a direct financial benefit from the infringing reproduction, preparation of derivative works, distribution, and/or public performance of the copyrighted works contained in Defendants' Videos, including but not limited to the musical works listed in Schedule A, including (among other financial benefits) increased brand recognition and product sales.

*Id.* at PAGEID141 (¶ 69). Once again, however, Plaintiffs do not allege any instance in which Defendants received a direct financial benefit from an alleged act of infringement by a third party.

***Finally***—and unsurprisingly, as Plaintiffs have not even accused any social media platform of direct infringement—Plaintiffs do not identify any attempt by Defendants to induce a platform

to infringe. Nor do they allege any control over or direct financial benefit to Defendants from any act of direct infringement by a platform. *See* FAC (entirety).

## III. THE LAW OF SECONDARY COPYRIGHT INFRINGEMENT

The Copyright Act "does not expressly render anyone liable for infringement committed by another." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984). Courts have nevertheless recognized two forms of secondary liability for a third party's copyright infringement: contributory infringement and vicarious infringement. *Grokster*, 545 U.S. at 930.

### A. Contributory And Vicarious Infringement Both Require Plausible Allegations Of Direct Infringement By A Third Party

Contributory and vicarious infringement claims require plausible allegations of an underlying act of direct infringement. "One infringes contributorily by intentionally inducing or encouraging direct infringement … and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930. Thus, "[r]egardless of which theory is involved, secondary copyright infringement claims depend on direct copyright infringement claims." *Tomelleri v. SunFrog, LLC*, 721 F. Supp. 3d 566, 572 (E.D. Mich. 2024) (citation omitted). "In other words, a secondary copyright infringement claim will not survive a motion to dismiss if no direct infringement claim has plausibly been alleged." *Id.*

### B. Contributory Infringement After *Cox Communications*

In *Cox Communications*, the Supreme Court significantly narrowed the scope of contributory copyright infringement by anchoring it to its patent-law analogs in 35 U.S.C. §§ 271(b) and (c). 607 U.S. at 594 (2026) ("The[] two forms of contributory infringement track patent law"). Rejecting the broader test applied by the Fourth Circuit, the Supreme Court held that "[t]he intent required for contributory liability can be shown only if the party induced the infringement or the provided service is tailored to that infringement." *Id.* at 593 (emphasis added). The first

contributory infringement theory, inducement, tracks 35 U.S.C. § 271(b) and requires "active[] encourage[ment of] infringement through specific acts." *Id*. The second theory tracks 35 U.S.C. § 271(c) and applies to circumstances where a party provides an accused product or service that is "not capable of 'substantial' or 'commercially significant' noninfringing uses." *Id.* (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)).

Applying this framework, the Supreme Court reversed a $1 billion contributory-infringement verdict against an Internet service provider despite the jury's finding that the accused provider had received more than 163,000 notices identifying subscribers engaged in copyright infringement. *Id.* at 589-96. The Supreme Court held that Plaintiff failed to satisfy either contributory infringement theory. First, there was "no evidence of express promotion, marketing, and intent to promote infringement" and "mere knowledge that a service will be used to infringe is insufficient to establish the required intent to infringe." *Id.* at 594-95 (quotation omitted). Second, Cox's service was "used for many purposes other than copyright infringement" and Cox had not "tailor[ed] its service to make copyright infringement easier." *Id.* at 595.

Although Plaintiffs' contributory infringement claim in this case fails under either theory, it is most plausibly understood to be based on a theory that Defendants induced the platforms and/or influencers to infringe Plaintiffs' copyrights. FAC at PAGEID139 (¶ 62). In *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, a patent case that followed *Cox Communications*, the Supreme Court explained the pleading requirements for such an inducement claim. 608 U.S. 580 (2026).

The Supreme Court reinforced its prior holding in *Global-Tech Appliances, Inc. v. SEB S.A.*, that allegations that amount to negligence or reckless disregard for infringement are not enough to make out an inducement claim. *Hikma*, 608 U.S. at 590 (citing and quoting *Global-Tech*, 563 U.S. 754, 760 (2011)). The Supreme Court then set forth the elements of contributory

infringement by inducement. A plaintiff must plausibly allege facts demonstrating "[1] direct infringement by a third party… [2] knowledge that 'the induced acts constitute [] infringement,'… and [3] 'active steps ... to encourage direct infringement.'" *Id.* at 586-87 (citations omitted). A complaint must plausibly allege facts demonstrating that the defendant actually knew of or was "willfully blind" to the infringement. *Global-Tech*, 563 U.S. at 769 ("a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to actually known the critical facts."). Moreover, a complaint must also allege facts demonstrating that the defendant took "active steps ... to encourage [the known] direct infringement." *Hikma*, 563 U.S. at 593. A complaint "may not rely on" allegations of "'mere omissions, inactions, or nonfeasance' to allege active inducement." *Id.* at 594. Nor are allegations of statements or actions that "could be 'plausibly underst[oo]d' to induce infringement" sufficient to state a claim. *Id.* Inducement instead requires that the defendant ***desire*** that another infringe. *Id.* Thus, the Complaint must contain factual allegations that "plausibly constitute 'affirmative steps to bring about ***the desired result***' of infringement." *Id.* (emphasis added, citation omitted).

### C. Vicarious Infringement Requires a Direct Financial Benefit and Control

Vicarious copyright infringement applies the same principles of "vicarious liability . . . imposed in virtually all areas of the law." *Sony*, 464 U.S. at 435. The Fourth Circuit's decision in *Cox Communications* is instructive. 93 F.4th 222. As noted, the Supreme Court reversed the Fourth Circuit's ruling on contributory infringement in *Cox Communications*. The Supreme Court, however, left in place the Fourth Circuit's finding that the vicarious liability claim against the defendant was baseless when it denied *certiorari* on the plaintiffs' appeal of the Fourth Circuit's reversal of the jury's verdict on vicarious liability. *See Sony*, 93 F.4th at 233-34 (reversing the jury's verdict finding vicarious infringement)*, cert. denied*, 145 S. Ct. 2844 (2025).

Indeed, the Fourth Circuit had applied the Supreme Court's prior decision in *Grokster* in determining that the plaintiff had no legal basis for a vicarious infringement claim. *Sony*, 93 F.4th at 230-33. A defendant is vicariously liable for a third party's copyright infringement only if the defendant "[1] profits directly from the infringement and [2] has a right and ability to supervise the direct infringer." *Grokster*, 545 U.S. at 930 n.9. As the Sixth Circuit has reaffirmed, "[t]hese elements are independent requirements, and each must be present to render a defendant vicariously liable." *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 925 (6th Cir. 2003) (citation omitted).[4] The Fourth Circuit found in *Cox Communications* that the plaintiff had "offered no legally adequate theory to establish" a direct financial benefit from the infringement, *i.e.*, "the required causal connection between subscribers' copyright infringement and increased revenue to Cox." 93 F.4th at 233. The court explained that "in every case, the financial benefit to the defendant must flow ***directly*** from the third party's acts of infringement to establish vicarious liability." *Id.* at 232 (emphasis added). That Cox made money from alleged infringers' monthly subscription fees was not sufficient because Cox received the same monthly subscription fees from users who did not infringe. *Id.* The financial benefit must be from the infringement itself. *Id.* As the Fourth Circuit explained:

> [T]he crux of the financial benefit inquiry is whether a causal relationship exists between the infringing activity and a financial benefit to the defendant. If copyright infringement draws customers to the defendant's service or incentivizes them to pay more for their service, that financial benefit may be profit from infringement. But in every case, the financial benefit to the defendant must flow directly from the third party's acts of infringement to establish vicarious liability.

*Id.* at 231-32 (citations omitted).

---

[4] Unlike contributory infringement, "[a] defendant's ignorance about the infringement or the performances does not blunt vicarious liability." *Broadcast Music, Inc. v. Meadowlake, Ltd.*, 754 F.3d 353, 355 (6th Cir. 2014)).

These same standards have been applied by courts around the country, including within the Sixth Circuit. For example, in *Eight Mile*, the court found that allegations that "the availability of infringing material acts as a draw for customers" and the infringing content increases "advertising, sponsored posts, and subscription fees" are not sufficient to state a claim for vicarious infringement. 2026 WL 1735026, at *6. In *Erickson Productions, Inc. v. Kast*, the Ninth Circuit found that allegations that infringing material "enhanced the general attractiveness of Kast's website to customers, and thereby 'drew' visitors to purchase … services" were also insufficient to maintain a vicarious infringement claim. 921 F.3d 822, 829 (9th Cir. 2019). Avoiding paying for a license is also not a direct financial benefit, "[o]therwise, the requirement of a direct financial benefit would be rendered meaningless, since—at least where, as here, licenses are for sale—a direct infringer necessarily saves money by failing to obtain a license." *Id.* at 830.[5]

## IV. ARGUMENT

A Rule 12(c) motion is evaluated under the same standards as a motion to dismiss under Rule 12(b)(6). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "[A] plaintiff must plead facts that, if true, 'allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,'" as well as plead facts that "rule out 'obvious alternative explanation[s]' for the defendant's conduct[.]" *Hikma*, 608 U.S. at 589-90 (citing, in turn, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] Plaintiffs' Amended Complaint cites two decisions from the same district court in Florida in support of its claims, including one decision in which the Florida court granted summary judgment finding the defendant vicariously liable for infringements by influencers. *See* FAC at PAGEID122 (¶ 4, n.1) and PAGEID137 (¶ 52) (*citing UMG Recs., Inc. v. Vital Pharms., Inc.*, No. 21-CV-60914-CIV, 2022 WL 2670339 (S.D. Fla. July 11, 2022); *Sony Music Entm't v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858 (S.D. Fla. Sept. 14, 2022)). As discussed below, these decisions are not consistent with Sixth Circuit law or the allegations in the Amended Complaint.

### A. Plaintiffs' Contributory and Vicarious Infringement Claims Fail Because Plaintiffs Fail to Allege a Predicate Underlying Direct Act of Infringement

The Court should dismiss Plaintiffs' contributory and vicarious infringement claims because the Amended Complaint contains no plausible allegations of direct infringement by any third party. *Tomelleri*, 721 F. Supp. 3d at 572. Plaintiffs have failed to allege any underlying act of direct infringement by the platforms, even in a conclusory fashion. For the influencers, the Amended Complaint fails to identify any specific influencer post—or for that matter, any influencer(s)—that allegedly directly infringed Plaintiffs' copyrights.

Indeed, to the extent that influencer posts may be hiding among the accused posts in Schedule A to the Amended Complaint, Plaintiffs attribute the purported infringement to Defendants or a related entity, not to any influencer(s). Moreover, although the Plaintiffs interpret the platforms' terms of service as purportedly prohibiting "commercial" or "non-personal" use of music, there are no allegations that these terms of service bar influencers from using music on their accounts. FAC at PAGEID136-137 (¶ 51). To the contrary, the Amended Complaint alleges that influencers are people with influence, not businesses, who post content on a variety of topics. *Id.* at PAGEID122 (¶ 4). There are no factual allegations that influencers are (or should be) treated the same as Defendants and barred from using music on their social media accounts or posts.

Accordingly, Plaintiffs have failed to state a claim for contributory or vicarious liability based on direct infringement by either platform(s) or influencer(s) as a matter of law. Judgment should be entered in Defendants' favor on Counts II and III of the Amended Complaint.

### B. Plaintiffs' Contributory Infringement Claim Fails Because Plaintiffs Fail to Allege Adequate Knowledge of The Infringement or Inducement Thereof.

The Court should also enter judgment against Plaintiffs on their contributory infringement claims on the independent grounds that Plaintiffs fail to adequately allege Defendants' (1)

knowledge of infringement and/or (2) active inducement of infringement. For these additional reasons, judgment should be entered against Plaintiffs on Count II of the Amended Complaint.

### 1. Plaintiffs Fail to Allege Knowledge of the Alleged Infringement

Plaintiffs do not even attempt to allege that Defendants would have known of any direct infringement by the platforms. Regarding Defendants' alleged knowledge of infringement by influencers, Plaintiffs' allegation that Defendants had "actual and constructive knowledge" of (unidentified) alleged influencer infringements is plainly insufficient under the Supreme Court's standards, as Plaintiffs fail to allege any ***facts***—as opposed to broad, speculative generalizations—demonstrating that Defendants had actual knowledge of influencer infringement(s) or were willfully blind to them. *Global-Tech*, 563 U.S. at 769.

Plaintiffs plead five broad categories of alleged conduct by Defendants that are purportedly relevant to their inducement theory, none of which are sufficient: (1) compensating influencers, (2) reviewing influencers' posts, (3) supervising or selecting "content" (without reference to music), (4) reposting influencers' videos on Defendants' own social media pages, and (5) "referring to the sound recordings and musical compositions used in" the videos. FAC at PAGEID139 (¶ 62). The Amended Complaint, however, fails to allege any facts within any of these five categories demonstrating that Defendants knew of an act of infringement by an influencer. *Twombly*, 550 U.S. at 570 (conclusory allegations unsupported by facts insufficient to state a claim as matter of law). Therefore, none of these categories plausibly allege that Defendants knew (or were willfully blind to) an influencer's infringement of Plaintiffs' copyrights.

Plaintiffs further allege that Defendants' "professional staff are directly involved in … [and] directly working with and overseeing social media influencers, … including by providing advice and direction as to the content" of their videos; Defendants have been "encouraging … influencers to create video content and feature Defendants' products" in "Defendants' Videos";

and Defendants are "actively reviewing Defendants' Videos that are influencer-made and" re-posting influencer videos "on Defendants' own social media pages." FAC at PAGEID130 (¶ 43). Notably absent from these allegations are any alleged facts supporting that Defendants knew that an influencer would (a) select Plaintiffs' copyrighted music for a post or (b) that by selecting Plaintiffs' copyrighted music, that the influencer would infringe Plaintiffs' copyrights.

At most, Plaintiffs have alleged that Defendants knew that influencers use music in their posts and that their use of music ***might*** infringe a copyright owned by Plaintiffs. *Id.*; *see also id.* at PAGEID 129-131 (¶¶ 40-44). Knowledge that infringement ***might*** occur, however, is insufficient as a matter of law to establish contributory infringement. *See Global-Tech*, 563 U.S. at 769; *cf. Cox*, 607 U.S. at 594 (even "knowledge that a service ***will*** be used to infringe is insufficient to establish the required intent to infringe") (emphasis added).

**2. Plaintiffs Fail to Allege Inducement of the Purport Infringement**

Plaintiffs have also failed to allege sufficient facts demonstrating that Defendants took affirmative steps to induce any third party to infringe their copyrights. Once again, the Amended Complaint is devoid of any allegation that Defendants took steps to induce any infringement by the platforms. As for influencers, the Amended Complaint's theory rests on the allegations that Defendants "promot[ed] such infringement through the compensation paid to social media collaborators and other social media influencers, posting and/or reposting [the] Videos, and specifically referring to the sound recordings and musical compositions used" therein. FAC at PAGE139 (¶ 62). But there is no allegation that influencers were paid to infringe. A complaint "may not rely on" allegations of "'mere omissions, inactions, or nonfeasance' to allege active inducement." *Hikma*, 608 U.S. at 593 (citation omitted). Inducement requires "active encourage[ment of] infringement through specific acts." *Cox Communications*, 607 U.S. at 593. Plaintiffs' Amended Complaint alleges neither "active encourage[ment]" nor "specific acts."

To the extent that the Amended Complaint makes general assertions regarding Defendants, it describes an ordinary marketing campaign where, at most, influencers were encouraged to use music. There is no allegation that Defendants took active steps to encourage influencers to use Plaintiffs' music, much less encouraged use of Plaintiffs' music for the purpose of infringing Plaintiffs' copyrights. Indeed, the Amended Complaint lacks any allegation that Defendants cared whether influencers used Plaintiffs' music as opposed to other music offered by the platforms.

The Amended Complaint's allegations that Defendants' staff were "directly involved" in "creating, commissioning, reviewing, and selecting videos for use on social media" and "providing advice and direction as to the content of the promotional videos" are also insufficient to allege active encouragement to infringe. FAC at PAGEID130 (¶ 43). These allegations lack factual support and necessary specificity; they also describe, at most, brand oversight and not an intent to encourage infringement. *See id*. The Amended Complaint identifies no instruction, guidelines, or communication from Defendants to any influencer regarding the selection of music, copyrighted or otherwise. And the right to review a finished influencer post is a far cry from encouraging an influencer to infringe a copyright. *See Hikma*, 608 U.S. at 589-595.

Furthermore, where there are "'obvious alternative explanation[s]' for the defendant's conduct"—as there are here—it is Plaintiffs' obligation to plead facts demonstrating that those alternative explanations do not apply. *Id*. at 1399. Again, there are no allegations that the terms of service which Plaintiffs interpret as purportedly prohibiting "commercial" or "non-personal" use bar influencers from using music on their personal accounts. FAC at PAGEID136-137 (¶ 51). There is also no allegation that Defendants would know influencers—individuals who post content on a wide variety of topics—were prohibited from using music on their personal accounts or that

Defendant knew that any influencer was committing copyright infringement by including music on any post. *Id.* at PAGEID122 (¶ 4).

Finally, the Amended Complaint alleges that Defendants induced infringement by reposting influencer videos on Defendants' own accounts and/or "specifically referring to the sound recordings and musical compositions used in" the videos. FAC at PAGEID139 (¶ 62). Defendants' re-post of an influencer post on Defendants' social media accounts may be an alleged direct infringement by ***Defendants***, but it is not an allegation of active encouragement of ***the influencer*** to infringe. And the allegation that Defendants refer to sound recordings and compositions appears to relate to the assertion Defendants' accused posts identified the featured song. *See, e.g., id.* at PAGEID133 (¶ 46(c)) (citing a post captioned "Yo Gotti • Pose (feat. Megan Thee Stallion, Lil Uzi Vert)."). Identifying the title of a song in a caption is attribution; it is not active encouragement of an influencer to infringe.

Taken either together or individually, the Amended Complaint's allegations describe a shoe company running an influencer marketing campaign—not a campaign to induce copyright infringement. Indeed, the Amended Complaint's allegations describe the same kinds of activities that the Supreme Court held legally insufficient in *Cox Communications* even though the defendant had received ***163,000 infringement notices***. 607 U.S. at 589-95; *cf. Eight Mile*, 2026 WL 1735026, at *5 (refusing to "equate an encouragement to use the tools with an encouragement to infringe, especially when the tools can be used in a non-infringing way"). For these reasons as well, judgment should be entered against Plaintiffs on their contributory infringement claim.

### C. Plaintiffs' Vicarious Infringement Claim Fails Because Plaintiffs Fail to Allege a Direct Financial Benefit from any Alleged Third-Party Infringement

The Sixth Circuit requires "an obvious and direct financial interest in the infringement," not merely the existence of a business relationship during which the infringement allegedly

occurred, to establish vicarious copyright infringement. *Gordon*, 345 F.3d at 925. Thus, Plaintiffs must plead facts demonstrating a plausible causal link between (1) an alleged infringement by a platform or an influencer, and (2) a direct financial benefit to Defendants. *Compare* FAC at PAGEID141 (¶ 69) *with Hikma*, 608 U.S. at 589; *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. The Amended Complaint, however, alleges no such causal link.[6]

First, the Complaint's allegations that "popular music" acts as a draw to posts and accounts on social media fail to allege a causal connection between a purported infringement of Plaintiffs' copyrights and a direct financial benefit to Defendants. *E.g.*, FAC at PAGEID122 (¶ 4). The platforms offer music libraries to encourage their users to add popular music to user posts. The Amended Complaint makes no allegation that the platforms or users, including alleged influencers, infringe a copyright every time "popular music" is added to a post. *Id.* Indeed, as discussed above, the Amended Complaint does not even allege that posts by an influencers constitute direct infringement by that influencer or that the platforms directly infringe at any time. *See* discussion *supra* at Part IV.A.

Moreover, even if these allegations are interpreted to mean platforms or influencers have infringed ***someone's*** copyrights when they added music to ***some*** posts, that is still not sufficient to state a claim for vicarious infringement. Vicarious infringement claims require allegations demonstrating a direct financial benefit from "infringement of the plaintiff's copyrighted material" not from "general infringement." *Perfect 10, Inc. v. Giganews, Inc.,* 847 F.3d 657, 673 (9th Cir. 2017). There is no allegation that Defendants received a direct financial benefit from an alleged

---

[6] Defendants also deny that they meet the control element of the test for vicarious liability but focus on the "direct financial benefit" element for the purposes of this motion.

infringement of ***Plaintiffs'*** copyrighted music—as opposed to, *e.g.*, benefits from Defendants' relationship with influencers and/or their use music ***generally***.

Second, there is no allegation that a (hypothetical) infringement by an influencer or platform "directly" or "obviously" benefited Defendants as opposed to, *e.g.*, benefiting the influencer(s) or platform(s) themselves. Missing from the Amended Complaint is any alleged ***factual*** support for the Amended Complaint's speculative theory that Defendants purportedly received "a direct financial benefit . . . including (among other financial benefits) increased brand recognition and product sales" due to the alleged use of Plaintiffs' music. *Id.* at PAGEID141 (¶ 69). For example, there is no allegation that any influencer post with Plaintiffs' copyrighted music performed any better than any post without Plaintiffs' copyrighted music; no allegations that consumers sought out influencer or other videos to hear Plaintiffs' music; and no alleged facts from which the Court could infer that Defendants' revenue was causally linked to the isolated presence of Plaintiffs' music on, *e.g.*, an influencer post as opposed to any number of other factors—*e.g.*, television advertisements, print advertisements, online advertisements, Defendants' social media posts (both accused and unaccused), unaccused influencer posts. the style of merchandise featured, the appeal of the associated video, or numerous other factors that may affect a purchasing decision.[7]

Third, this is not situation where the doctrine of vicarious liability can be stretched to accommodate an attenuated relationship between third-party infringement and a defendant's financial interest. For example, in *Fonovisa, Inc. v. Cherry Auction, Inc.*, the operator of a "swap

[7] The Amended Complaint's allegation that Defendants allegedly used Plaintiffs' copyrighted works "to attract attention to Defendants' Videos, drive sales to Defendants, and build Defendants' brand awareness and profile" is similarly conclusory and, worse, is not even tied to influencer posts: it is directed to all "Defendants' Videos," including videos on Defendants' own accounts. FAC at PAGEID123 (¶ 5).

meet" collected various "admission fees, concession stand sales and parking fees," as well as fees from vendors, where it was well known that counterfeit goods and pirated music were for sale. 76 F.3d 259, 261-263 (9th Cir. 1996). The Ninth Circuit held that the swap-meet operator had "a financial interest in the infringement sufficient to state a claim for vicarious liability" because there were allegations that the operator directly profited from (a) vendors selling infringing goods and (b) customers who attended the swap meet to purchase infringing goods. *Id.* at 263. Even if the *Fonovisa's* attenuated theory of vicarious liability remains viable in view of subsequent developments in the law (*e.g.*, *Grokster*, the Fourth Circuit's undisturbed opinion in *Cox Communications*, *etc.*), no such a causal link between alleged infringement and a purported direct financial benefit to Defendants has been alleged in the Amended Complaint. There is no allegation that Defendants "directly" and "obviously" benefited from a third party's infringing post as opposed to any other post or conduct on social media.

Finally, the Amended Complaint's reliance on a district court's grant of summary judgment in favor of the plaintiff on a vicarious infringement claim based on influencer posts in *Sony Music Entm't v. Vital Pharms., Inc*., does not help Plaintiffs here. 2022 WL 4771858, at *12-*13 (cited in FAC at PAGEID122 (¶ 4, n.1) and PAGEID137 (¶ 52)). This decision relied on factors, such as the avoidance of license fees, that other courts have found inadequate as a matter of law to establish vicarious infringement. *Compare id.* at *12 *with Erickson*, 921 F.3d at 830. The district court's opinion is also inconsistent with *Grokster* and contrary to Sixth Circuit law in finding it sufficient that the defendant had an "economic incentive to ***tolerate*** the infringing videos." *Compare id.* at *13 (emphasis added). The standard in the Sixth Circuit is that the defendant must have an "***obvious*** and ***direct*** financial interest ***in the infringement[s]***" themselves. *Gordon*, 345 F.3d at 925 (emphasis added); *see also Grokster*, 545 U.S. at 930 & n.9. Having an "economic incentive"

to "tolerat[e]" infringement is nowhere near sufficient to indicate a "direct" and "obvious" financial interest "in the infringement," which is the legal standard that applies to this case. *Id.*

At bottom, the Amended Complaint's financial-benefit allegation fails because the Amended Complaint does not allege facts showing a causal nexus between any purported infringement and a financial benefit to Defendants. That causal gap is fatal. *Eight Mile*, 2026 WL 1735026, at *6 (dismissing vicarious infringement claim: allegations of financial benefit in the form of "advertising, sponsored posts, and subscription fees" were "conclusory, at best" because those revenues "could come from multiple different sources" and the complaint had "not pled anything to directly correlate" the alleged infringement to any financial benefit); *see also Cox Communications*, 93 F.4th at 233 (Sony "offered no legally adequate theory to establish the required causal connection between subscribers' copyright infringement and increased revenue to Cox"); *Erickson*, 921 F.3d at 829 (vacating vicarious liability verdict: infringing content was "just an added benefit, rather than a draw"). The Court should also enter judgement in Defendants' favor on Plaintiffs' vicarious infringement claim.

## V. CONCLUSION

The Court should enter judgment in Defendants' favor on Counts II and III of the Amended Complaint and dismiss them with prejudice.

Date: September 21, 2026

Respectfully submitted,

**BARNES & THORNBURG LLP**

*By: /s/ David M. DeVillers*

David M. DeVillers (0059456), Trial Attorney
Kristopher J. Armstrong (0077799), Co-Counsel
41 S. High Street, Suite 3300
Columbus, Ohio 43215
Tel: (614) 628-0096
Fax: (614) 628-1433
e-mail: ddevillers@btlaw.com

e-mail: kristopher.armstrong@btlaw.com

-and-

Jeff M. Barron (pro hac vice)
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 231-7735
Fax: (317) 231-7433
e-mail: jeff.barron@btlaw.com

-and-

Will Craver (pro hac vice forthcoming)
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Tel: (310) 284-3880
Fax: (310) 284-3894
e-mail: will.craver@btlaw.com

-and-

Christina Hassel
**HAHN LOESER & PARKS LLP**
200 Public Square Suite 2800
Cleveland, OH 44114
Tel: (216) 621-0150
Fax: (216) 241-2824
e-mail: chassel@hahnlaw.com
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 21, 2026, a copy of the foregoing was served via the Court's ECF system on the following counsel of record, including:

Mark C Melko
William B Benson
BENSON & SESSER, LLC
421 West State Street, Suite 227
Columbus, OH 43215
Telephone: 614-696-6490
Email: mmelko@benson.law
Email: bill@benson.law

David A. Steinberg (*pro hac vice*)
Bradley J. Mullins (*pro hac vice*)
James D. Berkley (*pro hac vice*)
Constance Kang (*pro hac vice*)
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California 90067
Tel.: (310) 312-2000
Fax: (310) 312-3100
e-mail: das@msk.com
e-mail: bym@msk.com
e-mail: jdb@msk.com

*/s/ David M. DeVillers*
David M. DeVillers